# Hertzog, Appellant, *v.* South Reading Market House Co.

*Road law—Alley—Dedication—Intention—Market house.*

Where a market company builds its market house back from a ten-feet-wide alley so as to leave an additional width of five feet in the cartway of the alley, and places stalls outside of its building having stall numbers on the outside walls of the building, and rents the stalls during market days, and it appears that the additional space of five feet along the alley is necessary to permit loading and unloading through the doors along the alley in order that the usual traffic might not be impeded, it will be presumed that the market company left the additional space for the accommodation of itself, and not of the public, and that no dedication to the public of the five feet of space was intended.

It is not always the mere fact of user which controls the dedication. It is essential, to maintain it, that the user or enjoyment should be adverse; that it was with claim of right, and uninterrupted and exclusive for the required length of time.

Argued Nov. 13, 1917. Appeal, No. 182, Oct. T., 1917, by plaintiff, from decree of C. P. Berks Co., Equity Docket, 1915, No. 1157, on bill in equity in case of Henry F. Hertzog *v.* South Reading Market House Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Bill in equity to restrain the erection of a fence. WAGNER, J., filed the following opinion:

### FINDINGS OF FACT.

1. The plaintiff is a resident of the City of Reading, engaged in the hardware business at the northwest corner of Sixth and Bingaman streets, said city.

2. The plaintiff, on October 1, 1903, purchased all that certain two-story frame store stand, dwelling house and frame stable, and the lot of ground on which the same

are erected, situate on the south side of Bingaman street, between Fifth and Sixth streets, in Reading aforesaid, bounded and described as follows, to wit: Beginning at a point on the southeast corner of Pearl and Bingaman streets, thence along the south side of Bingaman street 112 feet more or less to Market House alley, thence along the west side of said alley 92 feet more or less to a point; thence by line of property now or late of Francis McDonough 105 feet 3½ inches, more or less, to said Pearl street; thence along the east side of said Pearl street 42 feet to the place of beginning, and having removed the buildings erected on said lot of ground, erected thereon two-story stone front mansard roofed dwelling houses fronting on Bingaman street, the easternmost house standing on the western line of said Market House alley; and in 1906 erected on the rear of said lots a warehouse fronting on said Market House alley, containing in front 24 feet and in depth 51 feet.

3. The defendant is a corporation organized under the laws of the State of Pennsylvania, and doing business in said City of Reading.

4. The defendant company on November 16, 1870, purchased all those two lots or pieces of ground beginning at the southwest corner of said Sixth and Bingaman streets, thence along the southern line of said Bingaman street southwestwardly by the course thereof 122 feet to a ten-feet-wide alley; thence along the eastern line of said alley south on a line parallel with Sixth street 173 feet to property of Henry Drumm; thence at right-angles east along the same 110 feet to the western line of Sixth street; thence at right-angles along the same north 224 feet to the place of beginning.

5. The defendant company erected on part of said plot of ground a market house, the western wall of which begins at a point being the intersection of the building line of said Bingaman street, and a line running 21 feet east of the western line of said Market House alley; thence running south 164 feet to a point;

thence west 5 feet 4 inches to a point; thence south 9 feet 7 inches to a point, and constructed a curb on a line beginning at a point being the intersection of the building line of said Bingaman street, and a line running 15 feet from the western line of said Market House alley, and extending south a distance of 164 feet, between which said curb line and said first mentioned western wall the said defendant company laid a brick pavement.

6. The properties of the plaintiff and the defendant company were both held by the same predecessor in title prior to 1870. The then owner laid out an alley of the width of ten feet, now known as Market House alley. Plaintiff's property bounds this alley on the west, and defendant's property bounds it on the east; that is, this alley lies between plaintiff's and defendant's properties. This alley opens out at its southern terminus on to a street of the City of Reading. It has been used by the public and the owners of the adjoining properties from said date of opening to the present time.

7. Along the western wall of defendant's market house building doors open out upon the said five-foot pavement and said alley. These doors are used by renters of spaces and the general public to enter the market house building on the side along said alley. These doors have existed there and have been thus used from the time of the erection of the market house building. On the western wall, at the time of the erection of the market house, were placed numbers to indicate the spaces reserved for stalls. These spaces were rented by the defendant company to renters who, on market days, placed temporary stalls on the pavement from which they sold to the public their various products. These temporary stalls were taken out of the market house on market days to the places indicated by the numbers on the wall, and on other days were kept within the market house.

8. At least one of these spaces, No. 278, located on this pavement, was still in use by the renters of the defend-

ant company at the time of the hearing of evidence in this case.

9. A roof extended out from the western wall of the market house of the defendant company for a distance of six feet eleven inches, thus making a covering over the pavement along this western wall.

10. The renters of the stalls of the defendant company, to unload and load the products that they sold, either at the temporary stalls on the five-foot pavement or at the stalls located on the inside of the building, drive their teams to the curb of this five-foot pavement either by backing them against or running them alongside the curb. Since 1870 they thus unloaded their goods and then again reloaded that which remained unsold. The additional space of five feet along the ten-feet-wide alley permitted the patrons to do this without interfering with the traffic through the ten-feet-wide alley.

11. During the entire time, that is, from 1870 to the present time, this space of five feet in addition to being used by the defendant company as aforesaid, was also used by the public in connection with the ten-feet-wide alley, as occasion required, and also by the plaintiff, especially since 1906, from which time he has used at least part of this additional space of five feet in driving into his warehouse.

12. This reserved space of five feet, now claimed by plaintiff as part of the alley, was necessary for the defendant company, for its own use, and was put there by defendant company for that reason and purpose.

### DISCUSSION.

The properties now owned by the plaintiff and defendant company were originally owned by the same person. Whilst so owned the owner located a ten-feet-wide alley, now known as Market House alley, through his property and thus divide it. In 1870 and 1871, when the defendant company erected its market house building, the west-

ern wall thereof was built twenty-one feet east of the western line of the ten-foot alley, thus leaving a space of twenty-one feet between the western wall of the market house, and the western boundary of the ten-feet-wide alley, which is the eastern building line of plaintiff's property. For the purposes of the market house, that is, the accommodation of renters of stalls, and the public desiring to do business with them, a number of doors were placed in the market building opening through this western wall into the alley. Along the western wall spaces for stalls were located by numbers. A pavement, five or six feet wide, with a curbing, was placed along this entire western side. The evident purpose of this pavement was to give extra and additional accommodations to the renters of the defendant company who desired outside stalls from which to sell their produce. The shedding or roof which extended out from the wall of the market house for six feet eleven inches, protected the patrons and customers from the inclemencies of the weather.

The evidence in this case clearly shows the purpose for which the additional space of five feet now claimed as part of the alley was used. Had this space not been reserved, the renters of stalls, in driving their teams into this ten-feet-wide alley and letting them stand there to unload and reload, would have blocked and prevented free passage through this alley; that is, the evident purpose of the extra reserved space outside of the curb was for the proper carrying on of the business of defendant company so as not to interfere with the rights of those who had free passage through the ten-feet-wide alley.

The plaintiff, however, contends that because these customers of the market house people, together with others who passed over the fifteen-foot space, used the entire fifteen feet, the plaintiff thus also using it, that this constituted a dedication of the five feet to the ten-feet-wide alley, thus making it fifteen wide, and asks for a permanent injunction to prevent the defendant from

erecting a fence upon the eastern line of the ten-feet-wide alley.

In support of this contention of dedication, plaintiff has cited Waters v. Philadelphia, 208 Pa. 189. The facts of that case, however, are altogether different from those in this case. The owner in that case made no use of the four feet space that would indicate that he regarded it as in any way ministering to his special benefit. There was no door upon the Walnut street end of the building and no steps leading to the street, as the entrance was from the Fifteenth street side. The court decided that even in such a case the dedication of the strip to the public use was a question for the jury. In this case, however, we find that clearly the purpose of this extra space in the alley was for the accommodation of the market house people in conducting their business, and was used in a manner so as to prevent blocking the original ten-feet-wide alley. In the case cited by plaintiff's counsel, we have these principles: Any acts of ownership by the owners of the soil repels the presumption of dedication......Where it is obvious that a space has been left open for the accommodation of the owner and not for the public the presumption of dedication does not arise......Dedication is a matter of intention. ......A mere permissive use by the public of a piece of ground left open by the owner in front of his property, and used by him in his own business and for his own convenience, is not a dedication to the public use and confers no right upon the public as against the owner. See also Weiss v. So. Bethlehem Boro., 136 Pa. 294; Gowen v. The Philadelphia Exchange Co., 5 W. & S. 141; Ferdinando v. Scranton, 190 Pa. 321, 327; Kleinhaus v. Northampton Traction Co., 60 Pa. Superior Ct. 641, 647. From the evidence in this case it is evident to us that the defendant company never intended to dedicate the five feet claimed by plaintiff to the ten-feet-wide alley and thus make it fifteen feet. The five feet were left open by the defendant company for its own use in

connection with its business, and has continued since to be so used by it with merely a permissive use to the public, including this plaintiff.

### FINDINGS OF LAW.

1. The use to which the defendant company put the five feet left open along the ten-feet-wide alley, does not constitute a dedication of the five feet to public use and thus make it a part of the ten-feet-wide alley, thereby increasing it to fifteen feet.

2. The construction by defendant of a fence at the place averred in plaintiff's bill will not be a violation of any right in plaintiff.

3. The plaintiff is not entitled to the injunction prayed for.

4. The costs of this proceeding shall be paid by the plaintiff.

And now, to wit, January 2, 1917, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record, sec. reg.

*Error assigned* was final decree refusing the injunction and dismissing the bill.

*E. H. Deysher,* for appellant.—There was a dedication of the space of five feet: Schenley v. Com., 36 Pa. 29; Griffin's App., 109 Pa. 150; Waters v. Philadelphia, 208 Pa. 189.

*E. Carroll Schaeffer,* with him *F. S. Livingood,* for appellee.—There was no dedication of the space: Gowen v. Philadelphia Exchange Co., 5 W. & S. 141; Root v. Com., 98 Pa. 170; Griffin's App., 109 Pa. 150; Com. v. Philadelphia & R. R. Co., 135 Pa. 256; Weiss v. So. Bethlehem Boro., 136 Pa. 294; Verona Boro. v. Allegheny Val. R. R. Co., 152 Pa. 368; Frankford & S. P. C. Pass. Ry. Co. v. Philadelphia, 175 Pa. 120.

OPINION BY KEPHART, J., March 2, 1918:

The appellee, many years ago, left open, on the east side of a ten-feet-wide alley, sufficient ground necessary for its own use as a market house property. It built its market house back from this alley and the street lines on Sixth street and Bingaman street. It placed stalls outside of its building, between the street and alley lines, and rented them during market days, having stall numbers on the outside walls of the building. The additional space along the alley was also necessary for the defendant to permit loading and unloading through the doors along the alley in order that the usual traffic might not be impeded. The court, determined that the building was set back from the original line of the alley that the appellee might facilitate the conduct of its own business in the alley, and the question whether a space left open on a private property bordering on a highway for the accommodation, not of the public, but of the owner, was thereby dedicated to public use was fully answered in the opinion of Judge WAGNER, which will be found in the report of this case.

It is not always the mere fact of user which controls the dedication. "It is essential, to maintain it, that the user or enjoyment should be adverse; that it was with claim of right, and uninterrupted and exclusive for the required length of time": Dillon on Municipal Corporations, Section 500.

The decree of the court below is affirmed.